## KAUFMAN v. UNITED STATES.

### No. 47340.

United States Court of Claims.

Dec. 5, 1950.

Abraham I. Goldstein, New York City, for plaintiff.

S. R. Gamer, Washington, D. C., H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff sues for his salary from January 20, 1942 to May 12, 1945, as Examiner in the United States Immigration and Naturalization Service, Department of Justice.

It is conceded by stipulation that his dismissal from the Service on January 20, 1942, was not in accord with the requirements of Sec. 6 of the Act of August 24, 1912, 5 U.S.C.A. § 652. It is further conceded that the essential facts in this case are the same as the facts in the case of Borak v. United States, 78 F.Supp. 123, 110 Ct.Cl. 236, certiorari denied 335 U. S. 821, 69 S.Ct. 43, 93 L.Ed. 375, ex-

cept for the facts bearing on the question of laches.

Two questions are presented:

1. Whether the delay in filing suit after his wrongful dismissal constituted laches on the part of plaintiff, barring his recovery.

2. Whether in computing back pay of a Civil Service employee for the period of wrongful dismissal there should be deducted the amount he earned in private employment during the same period.

After passing a competitive Civil Service examination in December 1940 and after a further oral examination in early 1941, plaintiff was appointed probationally to the office of Naturalization Examiner at a salary of $2,600 per annum. He began his service April 11, 1941. At the end of four months he was given an efficiency rating of "satisfactory" by the Chief Examiner in New York which was concurred in by the Assistant District Director who recommended his continuance in the position.

On November 17, 1941, the Assistant District Director informed plaintiff that his services had not been entirely satisfactory, and advised him to correct the deficiencies. On December 8, 1941, the Chief Examiner made a second efficiency rating covering the period August 11 to December 10, 1941, in which it was stated that plaintiff's services were considered to be "unsatisfactory." This was concurred in by the Assistant Director and on the basis of this report the District Director recommended that plaintiff's services be discontinued. Plaintiff was not informed of the recommendation nor was he given a copy of the ratings on which it was based.

On January 8, 1942, plaintiff received a letter from the Attorney General stating that his probational appointment was terminated without prejudice effective at the expiration of his accrued annual leave, which was found to be at close of business on January 20, 1942. A few days theretofore two other examiners in the New York City office, Stanley H. Borak and Abraham I. Goldstein, had been discharged on the same day, effective January 16, 1942.

On January 11, 1942, plaintiff wrote a letter to the Special Assistant Attorney General in charge of the Immigration and Naturalization Service appealing from his termination on the ground that it was illegal, in violation of the Civil Service rules, and that the determination that his services were unsatisfactory was arbitrary, unfair, and not based on fact. Two days later he orally requested the Deputy Commissioner of the Immigration and Naturalization Service to reconsider the order separating him from the Service. On January 22, 1942, he sent a letter to the Deputy Commissioner protesting his dismissal and on May 31, 1942, wrote to the Attorney General demanding reinstatement to the position from which he was dismissed.

Plaintiff deferred instituting legal action in order to await the determination of a suit brought by Stanley H. Borak who served in the same office as Naturalization Examiner and who had been discharged near the same time under similar circumstances.

On July 30, 1942, Borak instituted suit in the District Court of the United States for the District of Columbia against the Attorney General for a declaration that he was wrongfully dismissed from his position, and asked for a writ of mandamus requiring the defendant to restore him to office. The Court of Appeals on March 6, 1944, Borak v. Biddle, 78 U.S. App.D.C. 374, 141 F.2d 278, reversed the District Court, which had dismissed the petition, and held that Borak had been wrongfully dismissed because prior to his dismissal his probational appointment had ripened into a permanent one under the Civil Service Commission regulations, and that he was therefore entitled to the procedure specified by the act of August 24, 1912. It directed that he be restored to office.

On April 4, 1944, plaintiff wrote the Commissioner of Immigration and Naturalization calling his attention to the Borak decision, asserting that the facts in his case were identical and stating that he was entitled to be restored to office, and asked

what position the Attorney General would take. He also advised that he had withheld commencing a similar action pending final decision in the Borak case, and stated that should the Attorney General petition for certiorari in the case of Borak v. Biddle he would await that result.[1] He wrote a similar letter to the District Director of the New York Office of the Immigration Service.

He received a telegram dated July 31, 1944, from the Immigration Service reading as follows: "Your reinstatement under consideration by Department. Will advise later if appointment here will serve useful purpose."

On September 2, 1944, plaintiff was informed by the Immigration Service that his demand for reinstatement was denied.

On February 15, 1945, plaintiff and one Abraham I. Goldstein instituted suit as co-plaintiffs in the District Court for the District of Columbia against the Attorney General of the United States, seeking an adjudication that the two plaintiffs in that case had been illegally dismissed and that the defendant be directed to restore them to office.

On May 12, 1945, while such District Court action was pending, the District Director of the New York District of the Immigration and Naturalization Service, at the direction of the Attorney General, sent a letter to the plaintiff to the effect that his dismissal from the position of Naturalization Examiner was not in accordance with the procedural requirements of Sec. 6 of the act of August 24, 1912, and that at the direction of the Attorney General the plaintiff was thereby offered reinstatement to the position in the New York District office at the same salary and in the same grade he held at the time of his separation from the service. At the end of this offer, however, was the following statement: "This offer or reinstatement is tendered without prejudice to the right of the Department to take appropriate administrative action to determine your suitability for continued employment on the basis of the record of your previous work in that position."

On June 9, 1945, Abraham I. Goldstein wrote a letter on behalf of himself and plaintiff in which he set out that in view of the explicit reservation he had gone to see Mr. Watkins of the Immigration and Naturalization Service in order to find out what objection had been found to his work, and also to see the personal ratings to which he was entitled; that he was told the files were not in Mr. Watkins' office, but that he would not show them if he had them. He further stated in his letter that he was led to believe that dismissal proceedings would be started as soon as he was reinstated and he claimed that Mr. Watkins indicated resentment that he had gone to court to assert his rights. He gave other reasons, which are set out in finding 9, why he could not accept reinstatement. Plaintiff did not receive a reply to this letter and did not accept the offer of reinstatement.

In these circumstances we do not think that plaintiff was guilty of laches. The three employees were discharged at about the same time and under the same circumstances and for the same reason. We do not see how any good purpose could have been served from the standpoint of either the Government or the three persons affected by instituting three different suits and having the Government defend all three and the plaintiffs put to the expense of employing attorneys and possibly paying court costs in all three cases. It was natural that only one should file suit since it was apparent that whatever decision was rendered in that suit would apply to all three cases. This it seems to us fully explains the delay of plaintiff in not filing suit until after the final decision in the Borak case, which was rendered in the Court of Appeals on March 6, 1944.

Very soon after the Borak decision plaintiff began writing letters and apparently had assumed that the decision in that case would cause the same action

1. Certiorari denied 323 U.S. 738, 65 S.Ct. 42, 89 L.Ed. 591.

to be taken in his case. During this time plaintiff of course did not know whether the decision of the Court of Appeals would be taken to the Supreme Court and his inquiry in that regard was not answered. He was not informed until September 2, 1944, that his demand for reinstatement was denied. We do not think the delay from September 2, 1944 to February 15, 1945, a period of only a little more than five months, could be considered anything like the laches that would justify a court in barring a Civil Service employee from rights which he otherwise would have. Myers v. United States, 272 U.S. 52, 107, 47 S.Ct. 21, 71 L.Ed. 160.

The offer of reinstatement came on May 12, 1945. It was not much of an offer, carrying with it, it seems to us, the hardly concealed, the almost open threat, that if plaintiff accepted reinstatement dismissal proceedings would be begun almost immediately on the basis of his previous work. Such laches as plaintiff may have indulged evidently was not sufficient to enable his superior in the New York office to forget that he did not want plaintiff, even though a Civil Service employee, in his setup.

■ At any rate, the delay from the date of the offer of reinstatement on May 12, 1945, to the date of the filing of suit for the back salary on September 16, 1946, in the United States Court of Claims, could not be the subject of laches because plaintiff is not asking for back salary after the date of the offer of reinstatement, so there was no prejudice to the defendant in such delay as may have occurred between May 12, 1945, and the date of the filing of the petition in this court. Duke v. Turner, 204 U.S. 623, 632, 27 S.Ct. 316, 51 L.Ed. 652.

Plaintiff's total salary for the period from January 21, 1942 to May 12, 1945, would have amounted to $9,973.02. During the same period plaintiff earned from other employment $6,150, which should be deducted from the amount which otherwise would be due plaintiff. The plaintiff earn-

estly insists that this setoff should not be allowed and that the decision in the Borak case in that regard should not be followed. We cannot agree with this position.

■ The United States can be sued only in cases in which consent has been given; otherwise it is exempt. In the same section of the Code[2] in which consent is given for suit in this type of case and which was in effect at the time the facts in this case arose, there is the following provision: § 250(2) *Set-offs.* "Second. All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court: * * *."

See also 28 U.S.C. § 265, Judicial Code, § 159.

■ When a sovereign government which is otherwise exempt from suit gives consent to be sued it may levy any such conditions as it sees fit. This was one of the conditions and it is as plain as the English language can make it. The revised code, Title 28 U.S.C. §§ 1503 and 2508, while in different language, is to the same effect.

Plaintiff is entitled to recover the sum of $3,823.02. It is so ordered.

HOWELL, WHITAKER, and LITTLETON, JJ., concur.

MADDEN, Judge, (Dissenting in part.)

I think, as I did in the Borak case, that it is error to deduct the outside earnings of the plaintiff from the salary of which he was deprived by his illegal discharge. The deduction of earnings in a suit for loss of salary resulting from a wrongful discharge from either public or private employment is in no sense a set-off or counterclaim. It is merely an element in the measurement of the plaintiff's damages. The employer could not sue for the outside earnings. He would have no

---

2. Title 28 U.S.C. § 250.

pretense of a "demand" for them. Section 250 of Title 28 U.S.C., relied upon by the Court, seems to me to have no bearing on the problem.

As to whether, in measuring the plaintiff's damages, his outside earnings should be deducted, the rule, except for the Borak case, has been that the deduction is not made in the case of a public "officer," as distinguished from a public "employee." In the Borak case the Government conceded the rule, but denied that Borak was an officer. The Court held that Borak was an officer but refused to apply the rule. In this case the Government does not deny that the plaintiff is an officer, nor does it deny the rule. It merely asks for a repetition of the Borak decision.