Per Curiam:
This case was referred pursuant to Buie 37(e) to Saul Bichard Gamer, a trial commissioner of this court, with directions to make his recommendation for conclusion of law on defendant’s motion and plaintiff’s cross-motion for summary judgment. The commissioner has done so in an opinion filed January 16,1963. Plaintiff sought review of the commissioner’s opinion and recommendation for conclusion of law and the case was submitted to the court on oral argument by counsel. Since the court is in agreement with the opinion and recommendation of the trial commissioner as to plaintiff’s claim being barred by laches, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. The court expresses no opinion on the question of whether the evidence supports the charge of unsatisfactory personnel relationships and insubordination. Plaintiff is therefore not entitled to recover. Defendant’s motion for summary judgment is granted, plaintiff’s cross-motion for summary judgment is denied and plaintiff’s petition is dismissed.
OPINION OP COMMISSIONER
Plaintiff, a nonveteran with civil service status, was an employee (clerk-stenographer) at the Veterans’ Administration Hospital in Brooklyn, N.Y. She sues for back pay, contending she was illegally discharged.
On March 23,1955, plaintiff was served with a “Notice of Grounds for Intended Bemoval” which contained numerous charges against her relating to “Unsatisfactory Interpersonal Belationships” and “Insubordination.”
*813 Shortly thereafter, on April 11, 1955, plaintiff sustained an injury during the course of her duties. Asserting the resulting condition was disabling, she filed a claim for compensation with the Bureau of Employees’ Compensation, Department of Labor.
On April 15, 1955, plaintiff, through her attorney, filed an answer to the dismissal charges in which she contended, among other things, that the charges lacked specificity. Thereupon, on April 19, 1955, a new notice of intent to remove her was served which “revised” the previous charges and set them forth in more specific detail under headings of “Insubordination,” “Tardiness,” “Improper Conduct,” and “Unsatisfactory Interpersonal Relationships.”
As provided by Civil Service and Veterans’ Administration regulations applicable to such cases, plaintiff was permitted to have a hearing before a VA Hearing Committee. Such a hearing was had on June 7,1955. Plaintiff was represented by counsel and both plaintiff and the Hospital presented witnesses. Thereafter, the Hearing Committee recommended to the Manager of the Hospital that plaintiff be removed, and the Manager, on June 20, 1955, notified plaintiff that he had accepted such recommendation and that she was removed effective that day. This decision plaintiff, on July 14,1955, appealed to the Administrator of the VA.
On September 28, 1955, the Bureau of Employees’ Compensation, Department of Labor, rejected plaintiff’s claim for disability compensation.
Thereafter the Administrator of the VA, on April 3,1956, notified plaintiff that her appeal was rejected and her removal affirmed.
Over 6 months later, on October 23, 1956, the Bureau of Employees’ Compensation notified plaintiff that it had reversed its previous order rejecting plaintiff’s claim and that payment of compensation was authorized for the period May 9 to June 20,1955 (the date her removal was effective). Plaintiff was further informed that she could submit an additional claim for periods subsequent to June 20, 1955. Thereafter plaintiff’s claims for compensation for periods subsequent to June 20,1955, were successively allowed by the Bureau to September 19, 1957, after which date the Bureau *814 determined, by order of April 2,1958, that she had no injury-related disability. Plaintiff appealed this order to the Employees’ Compensation Appeals Board, Department of Labor. However, the Appeals Board, in a decision issued February 24, 1960, sustained the Bureau’s finding that no disability attributable to the April 11, 1955, injury existed after September 19, 1957.
Plaintiff then returned to the Bureau and sought from it, by way of a reconsideration of her claim, a modification of its April 2, 1958, order denying plaintiff’s claims for compensation subsequent to September 19,1957, contending that the order had been based upon a medical report which had confused her with another patient. However, by order of July 19,1960, the Director of the Bureau refused to modify the April 2, 1958, order. Plaintiff then again appealed to the Employees’ Compensation Appeals Board, this time contesting the Director’s refusal to modify. After a February 28, 1961, hearing on plaintiff’s appeal, the three-member Board, on April 18, 1961, unanimously affirmed the Director’s July 19, 1960, order.
Shortly thereafter plaintiff, on June 1,1961, filed her petition herein for back salary from June 20, 1955, contending that her dismissal was, for various reasons, arbitrary and capricious on the merits. She further claims that the dismissal was defective in that the nature of the charges related only to her efficiency although she had consistently received satisfactory efficiency ratings under the Performance Eating Act (5 TJ.S.C. 2001, et seq.), and that if she was to be discharged for reasons of inefficiency, she was entitled to the warning notice provided by such Act.
After having filed its answer, which included the affirmative defense of laches, defendant filed a motion for summary judgment contending that the administrative proceedings in plaintiff’s case (as evidenced by the complete documents relating thereto filed as exhibits in support of the motion) were on their face procedurally regular and in accordance with the applicable statute, the Lloyd-La Follette Act (5 TJ.S.C. 652), and that the decision to discharge plaintiff was, at a full and fair hearing, supported by substantial evidence. Defendant further bases its motion on the contention that *815 plaintiff’s claim is barred by laches, pointing out that from the time she was removed from her position on June 20,1955, to the time she filed her petition on June 1,1961, over 5 years and 11 months elapsed. An affidavit attached to the motion states that plaintiff’s position at the Hospital was filled not later than a few days after her separation.
In response, plaintiff cross-moved for summary judgment, contending (on the basis of an annexed affidavit executed by one who was present at the hearing) that the YA Hearing Committee was obviously biased and prejudiced against plaintiff; that the “majority of the charges” were based on events which took place during periods for which plaintiff had received satisfactory efficiency ratings; that all the charges related to the efficient performance of her work rather than to any specific acts of misconduct justifying charges under the Lloyd-La Eollette Act; and that defendant was now estopped from impugning its own ratings. Plaintiff further contends that the charges and the evidence relied on by defendant in support thereof in themselves demonstrate that defendant was motivated by considerations other than the efficiency of the service, as required by the LLoyd-La Follette Act.
In reply to the laches defense, plaintiff points to the extended proceedings before the Bureau of Employees’ Compensation and argues that it was necessary for her to await the completion thereof. Her contention in this regard is that a suit for back pay presupposes that the employee was ready, willing, and able to perform the duties of the job during the period covered by the suit, and that, since she was contemporaneously contending before the Department of Labor that she was disabled during the period herein involved, she would have been presenting inconsistent positions. She further maintains that she was justified in waiting for the Appeals Board’s final decision before filing suit because, had the decision been in her favor, the instant suit would have been moot since she would have been provided with compensation for the back pay period. Thus, she argues that filing the suit before such decision would have been premature. Consistent with these contentions, plaintiff now *816 amends her claim so as to delete the period prior to September 19,1957, because plaintiff was awarded compensation up to that date and plaintiff “would be estopped from saying that she was physically able to work up to that date” (Pltf.’s Supplemental Memorandum, p. 1).
It is in this posture that the case now comes before the court.
The contention now made by plaintiff in her cross-motion (no such allegation appears in the petition) that the VA Hearing Committee was biased and prejudiced can not even be presented to this court for decision. In her appeal to the VA Administrator, plaintiff raised no such issue. There is, therefore, a failure to exhaust her administrative remedies with respect to this question which prevents its consideration by this court. Long v. United States, 148 Ct. Cl. 4,9 (1960); Dixon v. United. States, 122 Ct. Cl. 332, 336-337 (1952). Had plaintiff so asserted at the administrative appeal stage and convinced the Administrator that she had been unfairly treated by the subordinate employees constituting the hearing committee, the Administrator could have taken steps to correct any such situation. Cf. United States v. Blair, 321 U.S. 730 (1944).
Further, the contention that some of the incidents upon which the charges are based fall within periods for which plaintiff received satisfactory efficiency ratings under the Performance Eating Act, that such matters would necessarily have to be considered in rating plaintiff under that Act, and that the agency is therefore estopped to question such ratings, likewise cannot be sustained. The court has consistently held that the Performance Eating Act and the Lloyd-La Follette Act are wholly independent of each other. “If a Federal employee is rightfully discharged under the Lloyd-La Follette Act of 1912, as amended, a favorable rating under the Performance Eating Act of 1950 will not benefit him.” Allen v. United States, 155 Ct. Cl. 598, 600 (1961), and cases there cited.
Generally, there is “not necessarily a contradiction between” the employee’s “removal and his ‘Satisfactory’ rating” because:
“A performance rating evidently is a composite rating which takes into account many phases of a person’s work. *817 Even if the character of one’s work were such as to cause it to be classed as satisfactory or at least such as one would not want to class as unsatisfactory, yet he may be so defiant toward those under whom he is working and so critical of his co-workers as to disrupt an organization to such a degree as to justify his removal.” De-Busk v. United States, 132 Ct. Cl.. 790, 796-797 (1955).
The nature of the individual acts which forms the basis of the charges in this case would seem to fall in such general category constituting no necessary inconsistency. However, even if, as plaintiff contends, this case were of a type where “each of the charges against plaintiff will reveal that they all related to the efficient performance of her work” (Pltf.’s Brief, p. 3), it would make no difference, for the courts have nevertheless sustained discharges for cause when there were in fact plain contradictions between such actions and the agencies’ actions under the Performance Rating Act.
For instance, in Atkinson v. United States, 144 Ct. Cl. 585 (1959), the employee was removed for cause under the Veterans Preference Act, the charges forming the basis of the removal being “identical with the charges upon which the employing agency intended to base its proposed unsatisfactory efficiency rating” (p. 597) which rating was, however, not issued solely due to the agency’s failure to give the required 90-day warning notice, thus resulting in the issuance instead of a satisfactory performance rating. Although pointing out that “where the cause of removal is based on the unsatisfactory performance of the employee in question during a period for which that employee was given a satisfactory performance rating, the employing agency has in such a case placed itself in an apparently inconsistent position which requires explanation” (p. 597), the court nevertheless, following Thomas v. Ward, 225 F. 2d 953 (Ct. App. D.C. 1955), sustained the dismissal. In Misuraca v. United States, 135 Ct. Cl. 387 (1956), the court similarly sustained a dismissal under the Lloyd-La Follette Act for “unsatisfactory service” based on the employee’s “current and past performance and work history” despite the fact that the employee had, for the period involved, received a satisfactory performance rating, a rating which had again resulted because no warning notice of unsatisfactory performance had, *818 through, admitted inadvertence, been given. To the same effect are Hoppe v. United States, 136 Ct. Cl. 559, 563 (1956), cert. den., 355 U.S. 816; Monday v. United States, 146 Ct. Cl. 6 (1959), cert. den., 361 U.S. 965; and Sells v. United States, 146 Ct. Cl. 1 (1959).
Nevertheless, were there no question of laches, the record before the court on the motions would present a sufficient factual basis to justify a trial on the issue of whether plaintiff’s discharge was otherwise arbitrary and capricious. An analysis of the “substantial evidence” upon which defendant relies (the record of the administrative proceedings) shows that the proof presented by the Hospital in support of some of the charges, which charges were ultimately actually relied on in dismissing plaintiff, is on its face so utterly lacking in any probative value as to fairly throw doubt upon the validity of the entire proceeding. Under such circumstances, a plaintiff should ordinarily be given his day in court in order to have an opportunity to prove his contention that his discharge was arbitrary and capricious, and motivated by factors other than the efficiency of the service. Gadsden v. United States, 111 Ct. Cl. 487 (1948), cert. denied, 342 U.S. 856.
For instance, one of the charges against plaintiff, listed under “Unsatisfactory Interpersonal Relationships”, was an incident in which plaintiff was charged with answering “I’m off,” when a doctor, at 4:57 p.m., asked her to perform some secretarial duties (plaintiff’s workday ended at 5 p.m.). To support this charge, the Hospital called the doctor as a witness. However, his testimony was merely to the effect that after she made this statement, the doctor pointed out that the time was actually only 4:57 instead of 5 p.m., as plaintiff evidently thought, and that the work he wanted done could be handled quickly. Thereupon, the doctor testified, “she went ahead and took care of the matter.” (Committee Tr., p. 4.) This was the sum total of the “evidence” on this charge. That this trivial incident was meaningless and could not fairly be the basis for the discharge of an employee with civil service status is patent. And yet, in the June 20, 1955, notice of discharge to plaintiff, which stated that it was issued “after careful study and consideration of the as *819 sembled facts”, tbis “charge” was included as one of the bases for plaintiff’s removal “for cause,” the original charge being quoted verbatim. Surely it would seem that an objective “careful study” of the record should have' resulted in its elimination.
Similarly, one of the charges against plaintiff listed under “Tardiness” was that she arrived at work on February 8, 1955, at 8:45 a.m., 15 minutes late. The testimony showed, however, that that was a wintry day of inclement weather when not only plaintiff but a number of other employees too arrived late. Yet, plaintiff was the only one charged with an hour’s annual leave, although plaintiff’s supervisor had discretionary power to excuse employees in such circumstances where less than 30 minutes of tardiness was involved. Everyone else was in fact excused. Plaintiff’s supervisor testified that this action was taken against plaintiff pursuant to a prior determination that, “as a lesson” to plaintiff because of several instances of tardiness, she would be charged with an hour’s annual leave no matter how little the lateness amounted to and no matter what the excuse. That this rigid policy resulted in plaintiff’s being the only one so penalized where, under identical situations, everyone else was excused, seemingly made no difference. And when plaintiff, not surprisingly, strongly protested this discriminatory action against her, her very action in so protesting and in refusing to sign a leave record prepared for her signature which would have acknowledged the propriety of her being so charged with annual leave was the subject of still another charge under the heading “Insubordination.” Yet these “Tardiness” and “Insubordination” charges too were repeated verbatim in plaintiff’s dismissal notice as having been proved. Clearly, even if plaintiff’s protest was, understandably, somewhat more vehement than might have ordinarily been considered proper, a more sympathetic approach, considering the tragic consequences to an employee of a discharge for cause, would have resulted in the elimination of such incidents.
This is not to say that all the charges are on their face as devoid of evidentiary support as the above examples. Plaintiff was faced with lengthy charges containing some *820 30 individual items, and while some of them appear to be of a trivial nature, the court naturally would be reluctant to overrule an agency’s determination that they were such as to interfere with the efficient operation of the agency. DeBusk v. United States, supra, at p. 797. And it is also true that it is not necessary that all the charges be sustained in order to uphold a dismissal. Engelhardt v. United States, 125 Ct. Cl. 603 (1953); Blackmar v. United States, 128 Ct. Cl. 693, 706 (1954). Nevertheless, when defendant by summary action attempts to prevent a discharged employee from even having his day in court to prove liis allegation that his dismissal was arbitrary and capricious, and relies on the “substantial evidence” rule, the presentation of a record containing such charges and evidence as indicated in the above examples should ordinarily be considered as “enough to bring plaintiff into court on the merits of his case”, Levy v. United States, 118 Ct. Cl. 106, 112 (1950), and to permit plaintiff to prove, if she can, that in fact the entire action against her was motivated by unlawful considerations. Gadsden v. United States, supra.
The real problem, however, is whether this plaintiff should be given that privilege in view of her long delay in contesting judicially the legality of her discharge. In contending that the doctrine of laches bars the prosecution of plaintiff’s claim, defendant argues that plaintiff’s delay, calculated from the date of her discharge on June 20, 1955, amounts to over 5 years and 11 months. But since it is plain that plaintiff could not properly have brought suit prior to the exhaustion of her administrative remedies, and as her appeal to the Administrator of the Veterans’ Administration was not decided until April 3, 1956, the period of plaintiff’s delay should not be calculated as running prior to that date. Nevertheless, this would still amount to a delay of over 5 years. Delays by Government employees of far shorter periods in taking effective steps to test the legality of their removals have been held in a large number of cases to prevent the consideration of their suits on their merits. Some of them, with the approximate delay periods indicated, are Norris v. United States, 257 U.S. 77 (1921) (11 months); Morse v. United States, 59 Ct. Cl. 139 (1924) (1 year and *821 2 months) ; Grasse v. Snyder, 192 F. 2d 35 (D.C. Cir. 1951) (1 year and 4 months); Arant v. Lane, 249 U.S. 367 (1919) (1 year and 8 months); Jones v. Summerfield, 265 F. 2d 124 (D.C. Cir. 1959), cert. den., 361 U.S. 841 (2 years and 9 months); Chappelle v. Sharpe, 301 F. 2d 506 (D.C. Cir. 1961), cert den., 370 U.S. 903 (2 years and 10 months); Nicholas v. United States, 257 U.S. 71 (1921) (3 years); Plunkett v. United States, 58 Ct. Cl. 359 (1923) (3 years and 1 month); Evans v. Leedom, 265 F. 2d 125 (D.C. Cir. 1959), cert. den., 361 U.S. 935 (3 years and 2 months); Miner v. United States, 143 Ct. Cl. 801 (1958) (3 years and 6 months); Zagurski v. United States, 103 Ct. Cl. 755 (1945) (3 years and 6 months); Henry v. United States, 139 Ct. Cl. 362 (1957) (4 years); and Bailey v. United States, 144 Ct. Cl. 720 (1959) (4 years and 5 months).
It is true that laches is an “equitable doctrine” (Arant v. Lane, supra, at p. 371) that will not be applied where plaintiff has a satisfactory explanation for the delay and defendant fails to show resulting prejudice. Aviles v. United States, 151 Ct. Cl. 1, 5 (1960). “Each case” raising this problem “must be decided upon its own facts * * Norris v. United States, supra, at p. 81. However, prejudice would manifestly result here since, as would be expected, defendant filled this hospital position almost immediately after plaintiff’s discharge so that a recovery now by plaintiff would result in defendant’s being required to pay two salaries for the same service for a long period of time.
“A discharged employee is bound to assert his rights with diligence. The reason for this is obvious: The Government has the light to have its services disturbed as little as possible, and the Government should not be obliged to pay the salaries of two persons for a single service due to delay over a long period of time.” Bailey v. United States, supra, at p. 722.
Nor is the injury excuse for the entire delay offered by plaintiff acceptable. It is true, as plaintiff contends, that a suit for back pay cannot be maintained where the employee would not have been physically capable of performing the duties of the position involved during the back pay period. Armand United States, 136 Ct. Cl. 339 (1956). However, *822 it would seem that there was ample time for plaintiff to have served notice by prompt judicial action that she was contesting her discharge. On April 3,1956, when her appeal to the VA Administrator was rejected and her removal affirmed, plaintiff had until October 23, 1956, a period of over 6 months, within which to take effective action for it was not until then that the Compensation Bureau first allowed her disability claim, and then only for the limited period of May 9 to June 20, 1955. The claim had first been rejected over 6 months prior to the Administrator’s decision. Even after the Bureau’s favorable ruling, plaintiff could have sued promptly for the period after June 20,1955, for certainly at that time plaintiff did not know that her claim for periods subsequent to June 20, 1955, would be allowed or for how long a period of time such allowances would be made.
Nevertheless, had plaintiff taken prompt action after her disability payments ceased on September 19, 1957, it might well be that her delay up to such date could be considered excusable, for plaintiff could, with some plausibility, argue that only approximately 6 months after the Administrator’s decision was involved up to the time the Bureau’s decision in her favor was handed down and since, by successive allowances, the entire period from the date of her discharge to September 19, 1957, was in fact ultimately covered by disability compensation payments, it was logical for her to withhold suit at least until such date. Actually, under the Armamd doctrine, no such suit for pay up to such date could have been successfully maintained. Thus, a prompt suit covering pay for any time up to September 19, 1957, would have turned out to be futile. Indeed, plaintiff now concedes that she is not entitled to any recovery for any period prior to September 19, 1957, and eliminates such period from her claim.[1]
But even if plaintiff’s receipt of disability compensation up to September 19, 1957, excuses the filing of a suit prior thereto, it is difficult indeed to find in this disability matter a sufficient basis for further excusing plaintiff’s failure to seek *823 appropriate judicial relief until over 3 years and 8 months later. And even if the delay be further excused to April 2, 1958, the date of the Bureau’s decision that no compensation payments would be made for periods beyond September 19, 1957, a delay period of 3 years and 1 month still remains. As is made plain by the above cases, this is still a longer period of inaction than is permissible.
Plaintiff contends that, before taking judicial action against the VA based upon the alleged illegal discharge, it was reasonable for her to await the final completion of her various administrative steps in the Department of Labor concerning her disability compensation claim (consisting of the application to the Compensation Bureau for reconsideration of her claim as well as the two appeals to the Bureau’s Appeals Board), since success in these steps would again make a suit moot. She points to her prompt filing of the instant suit after the rejection of her second appeal, when it became plain that no further compensation relief would be forthcoming from the Department of Labor. But allowing months and years of time to run while seeking the type of administrative or other relief which is not a prerequisite to the filing of a proper suit is inexcusable. Bailey v. United States, supra; J ones v. Summerfield, supra; Evans v. Leedom, sufra; Grasse v. Snyder, supra; Arant v. Lane, sufra; Benson v. Zahner, 289 F. 2d 756 (D.C. Cir. 1960), cert. den., 366 U.S. 904. “* * * public policy required reasonable diligence on plaintiff’s part in asserting his right to a position which the Government might well fill with another employee.” Henry v. United States, supra, at p. 369. The administrative reconsideration and appeals proceedings which plaintiff was pursuing for over 3 years in the Bureau of Employees’ Compensation of the Department of Labor in an effort to obtain compensation for her injury had nothing to do with effectively asserting her legal rights to her position with the Veterans’ Administration. If repeated protests to the employing agency itself are held not to constitute a valid excuse for delay, as the above cases demonstrate, then certainly action before an entirely different agency of the kind herein involved which bears no relation whatsoever to the discharge and is therefore necessarily unrelated to the doctrine of ex *824 haustion. of administrative remedies, is even less excusable. It may well be, as plaintiff contends, that had she been successful before the Compensation Bureau in obtaining compensation for the entire period of time involved in her present claim, no suit would have been necessary. But this would have been equally true in those situations where the employees made repeated attempts with their own agencies to have their discharges set aside. Success in such efforts would also have eliminated the necessity of a suit.
The acceptance of plaintiff’s position would indeed open the door to the similar contention that could be made by discharged employees that they delayed filing suit because they were actively engaged in seeking other employment. Since outside earnings during illegal removal periods are deducted from back pay recoveries (Kaufman v. United States, 118 Ct. Cl. 91, 105 (1950); Goldstein v. United States, 118 Ct. Cl. 147 (1950)), a discharged employee could, with equal justification, offer the excuse that he was constantly attempting to obtain another position which would pay as much or even more than the position from which he had been discharged. Had he been successful, any suit for back pay would then have been as moot as would plaintiff’s had her compensation claim been ultimately allowed. But surely, despite the obligation imposed upon a discharged employee to mitigate damages by making a reasonable effort to secure other comparable employment (Schwartz v. United States, 149 Ct. Cl. 145 (1960)), this would not be accepted as a valid excuse for a long delay in failing to institute suit. Such activities, which admittedly could conceivably obviate the necessity of filing a suit at all — whether they be the repeated importuning of the employing agency itself, the seeking of disability compensation from another agency, or the attempt to find other employment paying equal or greater compensation — nevertheless do not excuse the employee from the requirement that, as a matter of sound public policy, he must diligently take effective action to assert Ms legal rights to a position which the agency in all probability has filled with another employee. Indeed, all during her contest of the charges before the YA, plaintiff’s claim for compensation was pending be *825 fore the Department of Labor, yet plaintiff evidently saw no inconsistency in prosecuting both, matters simultaneously.
The sustaining of defendant’s affirmative defense of laches thus prevents the consideration of plaintiff’s case on the merits to which plaintiff would otherwise have been entitled. Accordingly, plaintiff’s motion for summary judgment should be denied, and defendant’s motion for summary judgment should be granted and the petition dismissed.

 Armand too conceded that he was not entitled to recover any hack pay for the period when he was hospitalized. Armand v. United States, supra, footnote 4, p. 343.