**Pearle Henrietta GERSTEN, Executor of the Estate of William F. Oberkoetter,**

v.

**The UNITED STATES.**

No. 104-60.

United States Court of Claims.

July 15, 1966.

John I. Heise, Jr., Washington, D. C., attorney of record, for plaintiff; William S. Tyson, Washington, D. C., of counsel.

Edgar H. Twine, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

DAVIS, Judge.

William F. Oberkoetter, the plaintiff's decedent,[1] was separated in 1954, as a result of a reduction in force, from his civilian position as an auditor with the Chicago Ordnance District. The claim is that this separation was improper because, first, it stemmed directly from a previous illegal demotion and reassignment, and, second, the employee was not given the true reason for the reduction in force. The various steps taken by the agency and the Civil Service Commission with respect to the demotion, reassignment, and separation are set forth in the findings. We do not narrate or appraise them since we hold that, in any event, this suit was begun too late and the claim for back pay, even if otherwise valid, is defeated by laches.

Mr. Oberkoetter received his notice of the reduction in force on August 31, 1954, and the separation became effective on September 30, 1954. On September 9, 1954 he appealed to the Civil Service Commission. The Regional Director of the Commission's Seventh Region rejected the appeal, in effect, on October 21, 1954. The employee took no further appeal within the Commission.[2] The petition was filed in this court on March 25, 1960. From October 1954 to March 1960, some five years and five months elapsed. The unchallenged findings also show that, from the time of his separation by reduction in force, Oberkoetter believed that his rights as a classified civil service employee were violated by the Chicago Ordnance District, and that no later than August 1957 he became aware of this court as the forum for back-pay claims.

The defense of laches, if properly made out, is entrenched in the jurisprudence of demands for back pay or for restoration because of an illegal separation from the civilian federal service. See, e. g., Chappelle v. United States, 168 Ct.Cl. 362, 366 (1964); Alpert v. United States, 161 Ct.Cl. 810, 820–821 (1963); Bovard v. United States, 160 Ct.Cl. 619, 620–622 (1963), cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053. The delay of sixty-five months in filing suit in this case is clearly enough, unless thoroughly justified,[3] to bring down the bar. In *Alpert*, supra, the defense was sustained when the elapsed time was somewhat over five years, and the opinion recalls a number of cases from this and other courts holding laches applicable to periods ranging from eleven months to four and a half years. In *Bovard*, supra, the full delay from the exhaustion of the Civil Service Commission remedy to the filing in this court was about four

1. He died in December 1964 and the present plaintiff, his executor, was substituted.

2. One of the Government's defenses is that Mr. Oberkoetter failed to exhaust his administrative remedies within the Commission, but we do not consider that issue.

3. The court has not closed its eyes to circumstances showing affirmatively that a long delay was justifiable or properly excusable. See, e. g., Mallow v. United States, 161 Ct.Cl. 207, 213 (1963); Baxter v. United States, 122 Ct.Cl. 632 (1952); Levy v. United States, 118 Ct.Cl. 106 (1950); Kaufman v. United States, 93 F.Supp. 1019, 118 Ct.Cl. 91 (1950).

and a half years, and that employee had meanwhile brought an unsuccessful restoration suit in the district court.

■ Plaintiff's explanation of the delay is that, during the five years and five months, her decedent was either employed in other federal positions (November 1954–October 1955; October 1956–April 1957); engaged in seeking reinstatement through communications to the Senate Post Office and Civil Service Committee (June 1955; August 1957), this court (August 1957), the General Accounting Office (August 1957), the Civil Service Commission (August 1957), or the Chicago Ordnance District (October or November 1957); or was attempting to obtain an attorney to begin a proper action (August 1957–February 1960). See findings 21–25. These activities, separately and cumulatively, are insufficient justification for a delay of almost six years.

The seeking of administrative relief which is not a prerequisite to the filing of a proper suit has often been held an inadequate excuse. See Alpert v. United States, supra, 161 Ct.Cl. at 823–824, and cases cited.[4] It can be argued that this rule should not apply where the appeal is to the employing agency which can offer reinstatement as a matter of grace,[5] but in this case Mr. Oberkoetter's post-discharge dealings with his employer (the Chicago Ordnance District), in late 1957 and early 1958, would subtract only a few months from the total period. The long search for a lawyer to bring suit must also be rejected as a proper warrant for delay; there were no special circumstances vindicating that portion of the elapsed time. See Drown v. Higley, 100 U.S. App.D.C. 326, 244 F.2d 774, 775 (1957);

O'Connor v. Summerfield, 99 U.S.App. D.C. 249, 239 F.2d 69 (1956); Benson v. Zahner, 289 F.2d 756 (C.A.D.C.1960), cert. denied, 366 U.S. 904, 81 S.Ct 1046, 6 L.Ed.2d 203 (1961). Likewise, the year and a half plaintiff's decedent worked for the Federal Government in other jobs at the grade level he claims here (Nov. 1954–Oct. 1955; Oct. 1956–April 1957) should not be excluded from the delay-period (see Alpert v. United States, supra, 161 Ct.Cl. at 824), especially since the present claim covers almost a year's unemployment (Nov. 1955–Oct. 1956) which divided his two stints of post-discharge federal employment and ante-dated the filing of the suit by about three and one-half years.

■■ In any event—plaintiff argues—prejudice is the only ground for invoking laches, and the Government was not, and could not have been, prejudiced by the belated institution of this action. We think that the longer the delay the less need is there to show, or search for, specific prejudice, and the greater the shift to the plaintiff of the task of demonstrating lack of prejudice. Cf. Benson v. Zahner, supra, 289 F.2d at 757; Bovard v. United States, supra; Miner v. United States, 143 Ct.Cl. 801, 803 (1958). Here the passage of time was sixty-five months, almost overtaking the final bar of limitations (28 U.S.C. § 2501). To the extent that some particular reason to infer prejudice be needed, it is adequately revealed by the record. If plaintiff were to prevail, the Government would be liable for the pay of Mr. Oberkoetter's abolished position for a period of some 8½ years[6] during which it received no services from him and would not have wanted any services.[7] More-

4. Baxter v. United States, supra, Levy v. United States, supra, and Elchibegoff v. United States, 106 Ct.Cl. 541 (1946), cert. dismissed, 329 U.S. 694, 67 S.Ct. 629, 91 L.Ed. 607 (1947), involved the pursuit of other judicial remedies before action was brought in this court. Kaufman v. United States, supra, involved the seeking of judicial relief by another employee in the same position as the plaintiff.

5. We do not decide this point.

6. Nov. 1955–Oct. 1956 (a year of unemployment); April 1957–December 1964 (about 7½ years of unemployment, ending with his death).

7. In Chappelle v. United States, supra, 168 Ct.Cl. 362, the employee was suing for back pay only for the period he was pursuing his administrative remedy and for 17 months thereafter. This was a much shorter time than is involved here.

over, there are indications that the Government's defense may have been hindered by the length of the delay and the destruction of official records in ordinary course. See finding 9, footnote 5; finding 13, footnote 8; and finding 18, footnote 10.

The plaintiff's claim is barred by laches, and she is not entitled to recover. The petition is dismissed.