CHICAGO AND NORTH WESTERN
RAILWAY CO.
v.
The UNITED STATES.
No. 71–70.

United States Court of Claims.
Jan. 21, 1972.

Robert Schmiege, La Grange, Ill., atty. of record, for plaintiff.

Francis H. Clabaugh, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant; John Charles Ranney, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, Judge, DURFEE, Senior Judge, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

DURFEE, Senior Judge.

Plaintiff seeks to collect transportation charges upon which the General Accounting Office withheld payment in order to satisfy an alleged indebtedness from plaintiff to the Railroad Retirement Board.

In 1957 and 1958, plaintiff acquired control of the Chicago, St. Paul, Minne-

apolis and Omaha Railway Company and the Litchfield and Madison Railway Company, and pursuant to the order of the Interstate Commerce Commission authorizing such control, paid displacement and dismissal allowances to certain employees of these railroads. Although these employees had received unemployment insurance benefits from the Railroad Retirement Board (hereinafter the Board), plaintiff did not reimburse the Board for the amount of these benefits when the allowances were paid, on the ground that such payments were not "remuneration" under section 2(f) of the Railroad Unemployment Insurance Act (hereinafter the Act), 45 U.S.C. § 352(f) (1970).[1] Thereafter, on November 22, 1961, the Railroad Retirement Board directed an administrative proceeding, in which plaintiff and other railroads were named as parties. The purpose of this proceeding was to determine whether the displacement and dismissal allowances paid to employees by these railroads were "remuneration", as defined in section 2(f) of the Act, and to determine whether the railroad parties were required to reimburse the Board for said payments.

On May 31, 1962, and again on May 27, 1963, plaintiff agreed in writing with the Board to extend the time for the Board to make any assessments on the above-mentioned displacement and

dismissal allowances until May 31, 1964. No assessments were actually made prior to the expiration of this extension.

The report of the examiner, designated by the Board to receive evidence and report to the Board pursuant to section 5(c) of the Act, was rendered on November 6, 1964. Exceptions thereto were filed by some of the parties including plaintiff, and the Railroad Retirement Board rendered its final decision on June 9, 1965, with one member dissenting. The Board held that plaintiff's allowances to its employees were pay for time lost, remuneration and compensation, and that there was due from plaintiff to the Board $31,718.63 in reimbursements under section 2(f) of the Railroad Unemployment Insurance Act; and $2,057.74 in contributions under section 8 of the Act, with respect to the particular allowance payments involved in the proceeding.

On August 5, 1965, plaintiff, through its General Attorney, wrote the Secretary of the Railroad Retirement Board requesting a ninety-day extension of time within which to file an appeal of the Board's decision of June 9, 1965. On August 9, 1965, the Board granted the motion for extension of time to and including December 18, 1965. On December 14, 1965, plaintiff again through its General Attorney, wrote the Board stating that it considered the decision of

---

[1]. Section 2(f) of the Railroad Unemployment Insurance Act entitled "Effect of payment of benefits for remunerable period; payment of surplus remuneration to Board" provides as follows:

"If (i) benefits are paid to any employee with respect to unemployment or sickness in any registration period, and it is later determined that *remuneration* is payable to such employee with respect to any period which includes days in such registration period which had been determined to be days of unemployment or sickness, and (ii) the person or company from which such *remuneration* is payable has, before payment thereof, notice of the payment of benefits upon the basis of days of unemployment or sickness included in such period, the *remuneration* so payable shall not be reduced by reason of such benefits but the *remuneration* so

payable, to the extent to which benefits were paid upon the basis of days which had been determined to be days of unemployment or sickness and which are included in the period for which such *remuneration* is payable, shall be held to be a special fund in trust for the Board. The amount of such special fund shall be paid to the Board and in the collection thereof the Board shall have the same authority, and the same penalties shall apply, as are provided in section 358 of this title with respect to contributions. The proceeds of such special fund shall be credited to the account. Such benefits, to the extent that they are represented in such a special fund which has been collected by the Board, shall be disregarded for the purposes of subsection (c) of this section." [Emphasis supplied.]

the Board moot with respect to plaintiff, and further advised that plaintiff did not intend to file a petition for judicial review of said Order. The premise stated by plaintiff for this position was that the time for making assessments under sections 2(f) and 8 of the Act had expired on May 31, 1964 and "[a]ssessment and collection of the amounts declared to be due from North Western by the Board's order in this proceeding is, therefore, barred."

On June 29, 1966, the Board through its General Counsel, requested the General Accounting Office to effect collection of $33,776.37 plus interest, from the date of the Board's decision. During the period February 28, 1967 to May 24, 1967, the General Accounting Office withheld the total amount of $41,233.85 from revenues otherwise due plaintiff for services rendered. As requested by the Board, and as provided in 20 C.F.R. § 345.16 (1971), interest was assessed from June 9, 1965 at the rate of one percent per month or fraction thereof. Plaintiff filed its suit herein on February 25, 1970 seeking recovery of these amounts.

Plaintiff does not now contest the holding of the Board that the displacement and dismissal allowances paid by plaintiff generally constitute "pay for time lost" for which the Board must be reimbursed under section 2(f). What plaintiff does contest here is the right of the Board, through the General Accounting Office, to withhold the total amount of $41,233.85 from revenues otherwise due plaintiff for services rendered. Plaintiff now contends that the limitations period specified in the three-year statute of limitations provided in 26 U.S.C. § 6501(a) (1970), commenced in the 1950's when plaintiff actually paid these allowances to its employees, and expired on May 31, 1964, the last time extension date agreed upon by the parties. This was some five months prior to the hearing examiner's report of November 6, 1964, and more than one year before the Board decision of June 9, 1965. Plaintiff contends that the Board proceeding ordered on November 22, 1961 under § 5(c) of the Act, 45 U.S.C. § 355(c) (1970), is merely permissive and not mandatory and consequently, neither creates a right for defendant to collect nor tolls the three-year statute of limitations on the right of defendant to collect.

Section 8(f) of the Railroad Unemployment Insurance Act, 45 U.S.C. § 358(f) (1970), authorizes the Board to collect contributions due from railway companies.[2] Further, § 2(f), which states that railroads remunerating employees for time lost shall reimburse the Board for any benefits paid those employees, also provides that such reimbursements shall be collected pursuant to the mechanics established in section 8. Therefore, the requirement of section 8 that collections are "subject to the statute of limitations properly applicable thereto", covers reimbursements under § 2(f). 45 U.S.C. § 358(e) (1970). Section 8(h) determines the particular limitations applicable by establishing that all provisions of law (including statutes of limitations) applicable to the Railroad Retirement Tax Act also apply to the collection of contributions and reimbursements under § 8(e). The statute of limitations applicable to the Railroad Retirement Tax Act is Title 26 of the United States Code, § 6501(a) which establishes a three-year limitation on the collection of taxes, as follows:

> Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed

**2.** Section 8(f) of the Act, entitled "Collection and deposit of contributions" states:

"The contributions required by this chapter shall be collected by the Board and shall be deposited by it with the Secretary of the Treasury of the United States, such part thereof as equals 0.25 per centum of the total compensation on which such contributions are based to be deposited to the credit of the fund and the balance to be deposited to the credit of the account."

within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

Sections 5(b) and (c) of the Act, 45 U.S.C. § 355(b) and (c) (1970) [3] authorized the Board to conduct administrative proceedings such as those herein in order to determine whether plaintiff was required to reimburse the Board. A full reading of subsection (c) shows that it authorizes the Board to make determinations as to whether a company should be required to pay contributions, even though no claims based upon service with such company have been filed. Western Pacific R. R. Co. v. Habermeyer, 382 F.2d 1003, 1010 (9th Cir. 1967), cert. denied 390 U.S. 980, 88 S.Ct. 1100, 19 L.Ed.2d 1277 (1968). Plaintiff was a party to and participated in these proceedings. During the hearings plaintiff twice agreed therein with the Board to extend the time for the Board to make assessments involved in the administrative proceedings. Despite its present contention that the three-year statute of limitations had expired on May 31, 1964, plaintiff continued to participate in the Board proceedings. The Board's examiner filed his report on November 6, 1964, and specific exceptions thereto were subsequently filed by plaintiff and the other railroads. At no time does it appear that plaintiff ever raised its present defense of the statute of limitations during these proceedings. In its decision dated June 9, 1965, the Board adopted, with certain exceptions, the Ex-

aminer's findings of fact and conclusion of law. The Board concluded its decision by stating:

> The administrative bureaus of the Board are hereby authorized and directed, in making final settlement of the obligations of the 4 Railroads under this decision, to revise downward (but not upward), without further reference to the Board, the amounts due from the Railroads as stated in the findings herein adopted, to correct any clerical errors, errors in computation, etc. which may be brought to their attention.

Section 5(g) of the Act (45 U.S.C. § 355(g) (1970)) provides:

(g) Finality of Board decisions.

> Findings of fact and conclusions of law of the Board in the determination of any claim for benefits or refund, the determination of any other matter pursuant to subsection (c) of this section, and the determination of the Board that the unexpended funds in the account are available for the payment of any claim for benefits or refund under this chapter, shall be, except as provided in subsection (f) of this section, binding and conclusive for all purposes and upon all persons, including the Comptroller General and any other administrative or accounting officer, employee, or agent of the United States, and shall not be subject to review in any manner other than that set forth in subsection (f) of this section.

Subsection 5(f) of the Act provides for judicial review of a final decision of the Board "only after all administrative remedies within the Board will have been availed of and exhausted * * *."

---

3. Section 5(b) of the Act entitled "Findings, hearings, investigations, etc., by Board" provides:

"The Board is authorized and directed to make findings of fact with respect to any claim for benefits and to make decisions as to the right of any claimant to benefits. The Board is further authorized to hold such hearings, to conduct such investigations and other proceedings, and to establish, by regulations or otherwise, such procedures as it may deem necessary or proper for the determination of a right to benefits."

■ Certainly, these requirements of the Railroad Unemployment Insurance Act as to Board hearings, finality of decisions and exhaustion of administrative remedies establish a clear intent of Congress that these administrative proceedings were mandatory, and not merely permissive.

■ Accordingly, we find that the three-year statute of limitations was tolled by the mandatory administrative proceedings herein. These proceedings began well within the three-year statutory limitations and the right to collect did not accrue to defendant until the final decision of the Board on June 9, 1965. Cf. Nager Electric Co. v. United States, 368 F.2d 847, 177 Ct.Cl. 234 (1966), cited in Crown Coat Front Co. v. United States, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); Friedman v. United States, 310 F.2d 381, 159 Ct. Cl. 1 (1962), cert. denied Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

There is also a serious question in this case whether plaintiff waived the statute of limitations by failing to plead it at anytime during the proceedings, in which it participated fully and extensively as a party. Plaintiff was well aware of a defense under the three-year statute of limitations as evidenced by its agreement to extend the time to May 31, 1964. Only after the Board had rendered its decision and after plaintiff had requested, and been granted, an extension of time for appeal, did plaintiff for the first time assert that the Board's decision was moot because of the three-year statute of limitations. The Board proceedings extended from November 22, 1961 to June 9, 1965—over three and a half years. Nowhere in the Board proceedings, even after expiration of the agreed time extension to May 31, 1964, or in the Board decision is there any other reference to the statute of limitations.

In his authoritative treatise on Administrative Law, Vol. 3, sec. 20.06, Professor Davis has not dealt directly with the specific question as to the waiver of a statute of limitations by failure to plead it during administrative proceedings, as generally required in civil court actions. However, he points out that:

Many cases support the proposition, as stated by the Supreme Court, that "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." [Unemployment Compensation Commission v. Aragon, 329 U. S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946)]. 3 Davis, Administrative Law Treatise § 20.06 (1958).

Professor Davis further states that this basic idea is embodied in several statutes creating major federal regulatory agencies. For example, the National Labor Relations Act, 29 U.S.C. § 160(e) (1970) states: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." *See also* Securities Exchange Act of 1934, 15 U.S.C. § 78y (1970); Fair Labor Standards Act, 29 U.S.C. § 210(a) (1970).

We have held in specific cases that failure to raise an issue in proceedings before the Veterans Administration or the Civil Service Commission will prevent consideration of that issue by this court, Pine v. United States, 371 F.2d 466, 178 Ct.Cl. 146 (1967), wherein plaintiff failed to contend before the Civil Service Commission's Board of Appeals and Review that he was denied the opportunity to cross-examine two witnesses at the hearing held by the Commission's New York Regional Office. Alpert v. United States, 161 Ct.Cl. 810 (1963), wherein plaintiff failed to contend before the VA Administrator that the VA Hearing Committee was biased and prejudiced. Dixon v. United States, 122 Ct.Cl. 332 (1952) wherein plaintiff

failed to contend before the Statutory Board of Review for the Veterans Administration that the administrative officials of the VA abused their authority and discretion and acted in an arbitrary and capricious manner with respect to her efficiency rating.

While this general rule, like all general rules, is subject to exceptions, we believe that it should be followed under the particular circumstances herein. If plaintiff is to be relieved from exhaustion of the mandatory administrative remedy herein because it was barred by the statute of limitations, surely the orderly administration of justice should preclude plaintiff from raising the defense of the statute of limitations for the first time, after the conclusion of the administrative hearing and decision, particularly under the facts of this case.

Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. Judgment is entered for defendant, dismissing plaintiff's petition.