JOSEPH BEHR & SONS, Inc.,

v.

The UNITED STATES.

No. 650–53.

United States Court of Claims.
March 6, 1957.

---

Edwin T. Powers, Jr., Rockford, Ill., for plaintiff. Charles A. Thomas, and Miller, Thomas, Hickey & Collins, Rockford, Ill., were on the briefs.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff purchased from the War Assets Administration surplus property located on the Island of Maui in Hawaii, which was stored at the United States Marine Corps Service Depot at Kahului. It claims there was a shortage in certain items, and sues for the market value thereof.

After an inventory of the property had been taken, a brochure entitled "Maui Sales Circular #6" was circulated among prospective bidders. Plaintiff and others submitted a bid, but all bids were rejected, and further bids were solicited. Plaintiff's second bid of $176,108 was accepted. The entire amount has been paid, except for $25,350, which plaintiff claimed was the value of the missing articles.

The missing items consisted of 11,000 Army cots, pilferage from 96 trucks, and one DeWalt Saw. These items are not involved in this litigation.

More than a year after the sale had been consummated, plaintiff claimed that additional items were missing, the total value of which it alleges was $25,387.80. For these amounts it sues in this action.

We are of opinion plaintiff is not entitled to recover.

In the first place, we think it is estopped to assert the claim sued on. When it presented its claim for the shortage of cots and the saw, and for pilferage from the trucks, it made no mention of the alleged shortage for which it now sues, although it says it knew of them at that time. And when it later paid the balance of the purchase price, less the amount claimed for the cots and the saw and the pilferage from the trucks, it deducted nothing for the items for which it now sues, and made no mention of them.

When claim was made on account of the cots, the saw, and the pilferage from the trucks, defendant sent its agent McMillen to Maui to investigate, but he made no investigation of the alleged shortage now asserted, because no claim with respect thereto had then been made. When, more than a year later, the present claim was first asserted, plaintiff had disposed of all of the goods and no investigation was possible.

Under such circumstances, we think plaintiff has waived the claim on which

it sues, and is estopped from asserting it. Mahoning Investment Co. v. United States, 3 F.Supp. 622, 78 Ct.Cl. 231, certiorari denied 291 U.S. 675, 54 S.Ct. 526, 78 L.Ed. 1064; Interstate Engineering Co., Inc., v. District of Columbia, to Use of Alco Products, Inc., 72 App.D.C. 152, 112 F.2d 214; Fowler v. Cotton State Lumber Co., 39 App.D.C. 220; Section 412, Restatement of the Law of Contracts. Cf. Cudahy Packing Co. v. United States, 75 F.Supp. 239, 109 Ct.Cl. 833.

■ In the second place, the sale to plaintiff was on an "as is, where is" basis, and it was expressly stated again and again in the advertisement for bids and in the sales documents that there was no warranty as to quantity.

The sales circular delivered to bidders contained the following recitals:

"Buyers are invited and urged to inspect property before submitting officers to purchase. * * *

" * * * (1) All sales will be made 'as is, where is,' (2) The purchaser assumes all obligations of removal, packing, dryage and shipping, (3) Condition is not warranted; items where marked as to condition are so marked for the purchaser's general information. Prospective buyers are urged to inspect before purchasing."

Under the heading "Special Notice to Purchasers" this statement appears:

"The quantity, kind, size and description of the commodities listed in this circular are not warranted."

Also, on 60 different pages of the sales circular listing the articles to be sold, there appeared this statement:

"The Government makes no warranty as to quantity, condition, kind or description. Inspection is imperative."

Plaintiff, however, says its agents made an actual check of the items advertised for sale, and verified the quantities stated in the advertisement. The proof does not support this statement. Philip Behr, plaintiff's vice president, inspected the property prior to the first bid. He testified that he opened sample packages of the items, but made no count of the quantity of each item.

After the second solicitation of bids, Murray Satin, an employee of plaintiff, made a further inspection of the property, which was located in 40 warehouses, and in adjacent open areas, the total circumference of which was from one and one-half to two miles. Satin's inspection consisted of entering the front door of each warehouse, walking its length, stopping from time to time to look at particular items, and leaving by the opposite door. He did not undertake to count the quantity of the several items. His inspection of all the property, located in the 40 warehouses and adjacent areas, covering an area one and one-half to two miles in circumference, consumed only one day. But he states that in June he made a physical count of the property, recording his count on tally sheets, and found that there were the shortages for which plaintiff now sues.

We doubt this testimony for several reasons: (1) plaintiff was instructed to produce his tally sheets and promised to do so, but has not done so; (2) no claim was made for these missing items in the formal claim filed on July 17, 1948, for other missing items, of equal value; (3) payment of the purchase price was made in full on October 15, 1948, except only for the shortages claimed on July 17, without any mention of the shortages now claimed; (4) the testimony of this witness does not inspire us with confidence. For instance, claim is made for a shortage of 13,500 pounds of saddle soap. The sales circular showed an estimated 15,000 pounds of saddle soap; the tally sheets on which the inventory was recorded show 15,000 pounds, but the last zero was crossed out. In recording the number of pounds the checker had used one too many zeros, and later crossed one of them out. Defendant's agent, McMillen, checked the sales circular and made a number of corrections therein on a master copy. This master copy showed 1,500 pounds. It was shown to all prospective bidders,

including plaintiff, so that they could note the corrections on their copy. Thus plaintiff was aware of the correction, but claims a shortage on the basis of a figure known to be erroneous. The proof shows that plaintiff actually disposed of 1,843 pounds of saddle soap, and, hence, it received and sold all of the saddle soap shown on the corrected inventory, of which plaintiff had knowledge.

Plaintiff was awarded the property on May. 28, and took possession of it immediately thereafter. If any part of the property disappeared thereafter, defendant cannot be responsible therefor.

Immediately on taking possession, plaintiff began disposing of the property. By the time the sales documents had been signed on June 25, it had disposed of $81,689 worth, and by July 4, of $99,-249.75 worth.

The property was advertised for public sale in the daily press; the sale began on July 4, and continued for three or four weeks. People from all over the island came to the sale. During the first three or four days approximately 1,000 people crowded into the warehouse area. Plaintiff had a sales force of nine people, who were wholly unable to keep watch over the property. Items were removed from the area without the necessity of producing any evidence of ownership.

Prior to delivering possession to plaintiff, the warehouses were padlocked and a Marine guard of 18 men, under the command of a first lieutenant, patrolled the area. The warehouses had no windows and had solid steel doors. The area was well lighted. There is no evidence of the removal of any items during this time.

If there was a shortage in the items claimed, it is much more likely that it occurred after plaintiff had taken possession than before. We are by no means convinced that there was a shortage in fact.

For the reasons stated, we are of opinion plaintiff is not entitled to recover. Its petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and LITTLETON, Judges, concur.