Donald S. WEIR, Jr.

v.

The UNITED STATES.

No. 358–69.

United States Court of Claims.

Feb. 16, 1973.

Nichols, J., concurred in an opinion.

Carl J. Felth, Washington, D. C., attorney of record for plaintiff.

James F. Merow, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## OPINION

KUNZIG, Judge: *

In issue in this military pay case is whether the refusal of the Army Board for the Correction of Military Records (the Board) to upgrade plaintiff's "discharge under conditions other than honorable", is an error of law, where plaintiff is a fully competent, adult soldier with self-confessed homosexual tendencies, confirmed by psychiatric evaluation.

* We are indebted to Trial Commissioner William E. Day for his findings of fact, which have been adopted in their near entirety, and for his recommended opinion, though we have substituted our own in reaching a different result.

We hold there is no error of law and the Board's decision is correct.

Further in issue is whether plaintiff is estopped from obtaining a judgment for back pay on his subsequent, sworn claim that he lied to the Army to obtain a discharge, and that the Army improperly failed to ascertain that he lied.

We conclude plaintiff is so estopped. Having chosen voluntarily to announce himself under oath as a man with homosexual tendencies to avoid military duty, he cannot now be heard to complain of the consequences of his choice.

Only the question of entitlement is presently before this court, both parties having agreed to limit this phase of the case to the question of plaintiff's right to recover, leaving *quantum*, if any, for further proceedings.

Plaintiff was born in 1942 in New Jersey. He graduated from Hamilton College in 1964, did a brief tour in the Peace Corps before being selected out during training as unsuitable, and then was, for a short time, successful as a real estate salesman in California. Early in 1965 plaintiff enlisted in the Army for three years in lieu of responding to the draft. After training as a power generator specialist, he was assigned to a missile battalion at Fort Hancock, New Jersey as a clerk in the battalion orderly room.[1]

Sometime prior to August 12, 1965, plaintiff talked with the base chaplain and told him that he feared his homosexual inclinations would get him into difficulty with men in the barracks. Plaintiff was thereafter examined twice at the Mental Hygiene Consultation Service. First, a competent clinical psychologist, Lt. Rudy, examined him. Then both Lt. Rudy and a competent psychiatrist, Dr. Weltner, examined him at a second session.[2]

On August 20, 1965, a report was prepared which made a psychiatric evaluation of plaintiff concluding he was fully competent and responsible for his actions. Elimination from the service was recommended with the diagnosis "sexual deviation—homosexuality." On August 24, 1965, plaintiff was informed by a Major Rollins that he was an investigating officer conducting an investigation of homosexual activity. Major Rollins informed plaintiff of his legal rights. Plaintiff then made a sworn statement reading in pertinent part s follows:

I, Donald S. Weir, Jr., RA 19824015, have been counseled and advised of the basis of action recommended. I have a copy of the Commanding Officer's report and copies of statements submitted to support the recommendations for elimination and the names of prospective witnesses to appear or to submit statements that will be used against me.

I have been offered counsel and I have declined to accept this offer.

I hereby waive hearing before a board of officers. I understand that if he, [sic] convening authorities direct a discharge, I will not be given another opportunity to appear before a board of officers before being discharged.

I would like to make the following statement.

I testify that I have a problem with homosexual tendencies which predates my coming on active duty with the US Army. These tendencies have trailed in my background since I was about nine (9) years old. Sporadically, these homosexual feelings supplant what society calls normal heterosexual activities. I have not engaged in these activities with military personnel at either this station or at my

1. A position which would require a security clearance.

2. While under psychiatric examination, plaintiff described his homosexual contacts since entering military service as having occurred with civilians and as being promiscuous, *i. e.* plaintiff rarely had more than a single contact with a homosexual partner.

previous ones, Fort Belvoir and Fort Polk, respectively. Generally, these engagements were with casual acquaintances whom I have met while on either leave or pass. Since these tendencies could occur in the future, I believe my mission for the US Army would be impaired.

On August 31, 1965, plaintiff executed a further statement waiving a hearing before a board of officers and acknowledging he was aware of the adverse effect a "discharge under conditions other than honorable" might have upon him in subsequent civilian life:

> I hereby waive hearing before a board of officers under AR 635–89 and accept discharge for the good of

the service. I understand that my separation from the Army may be effected by a discharge under conditions other than honorable; that I may be deprived of many rights and benefits as a veteran under both Federal and State law; and, that I may expect to encounter substantial prejudice in civilian life in situations where the type of service rendered in any branch of the Armed Forces or the character of discharge received therefrom may have a bearing.

Plaintiff was discharged from the service because of homosexuality, as a Class II Homosexual, as outlined in AR 635–89 [3] on October 12, 1965. He was

---

3. AR 635–89 as amended by Change 1, April 14, 1959 and Change 2, January 22, 1960 reads in pertinent part:

Section I
GENERAL

1. **Purpose.** These regulations prescribe the authority, criteria, and procedures for the disposition of military personnel who are homosexuals or alleged homosexuals.

2. **Policy.** *a.* Homosexual personnel irrespective of sex will not be permitted to serve in the Army in any capacity, and prompt separation of homosexuals, as defined in these regulations, is mandatory. Homosexuals are unfit for military service because their presence impairs the morale and discipline of the Army, and homosexuality is a manifestation of a severe personality defect which appreciably limits the ability of such individuals to function effectively in society.

*b.* The following classes of persons will not be processed under the provisions of these regulations:

(1) Individuals who seek to avoid military service by an unverifiable assertion of homosexuality.

(2) Those individuals who solely as a result of immaturity, curiosity, or intoxication have been involved in homosexual acts. Such individuals who are not eliminated from the service by sentence of court-martial and who are considered inept, unsuitable, or undesirable by reason of immaturity, alcoholism, or other character and behavior disorders may be eliminated from the service under other applicable regulations.

(3) In those rare cases in which homosexual acts are symptomatic of an incapacitating mental illness such as psycho-

sis, medical treatment will be provided and separation from the service by reason of the primary medical condition will be made, if indicated.

\*　　\*　　\*　　\*　　\*

3. **Definitions.** For the purpose of these regulations the following definitions apply:

*a. Homosexual.* An individual, regardless of sex, who demonstrates by behavior a preference for sexual activity with persons of the same sex.

*b. Homosexual act.* Bodily contact between persons of the same sex actively undertaken or passively permitted with the intent of obtaining sexual gratification, or any proposal, solicitation, or attempt to perform such an act.

*c. Class I.* Class I consists of those cases which involve an invasion of the rights of another person, as when the homosexual act is accompanied by assault or coercion, or where the person involved does not willingly cooperate in or consent to the homosexual act, or, if the act is cooperated in or consented to, where the cooperation or consent was obtained by fraud. Class I also includes cases which involve a homosexual act with a child under the age of 16 years, without regard to whether the child cooperated in or consented to such an act.

*d. Class II.* Class II consists of those cases in which homosexual military personnel have engaged in one or more homosexual acts not within the purview of class I during active military service. Class II also includes all cases falling within class I in which it is determined not to prefer charges, or, if charges are preferred, not to refer them to a court-martial for trial, or such cases where trial

reduced in rank to the lowest enlisted grade and discharged "under conditions other than honorable".[4]

After failing to obtain relief in various forums below, plaintiff now comes before this court stating that he carefully planned and fabricated the story to get out of the Army. He admits he lied under oath at the 1965 investigation and psychological and psychiatric examinations. Nevertheless plaintiff seeks:

| | |
|---|---|
| 1. A money judgment paying him for the remaining period of his enlistment. | (Although, as a result of his own fabrication, he never served any of this time and actually earned nothing.) |
| 2. Restoration to his rightful grade. | ("Rightful" is his allegation.) |
| 3. Consideration for a promotion to which he would have been entitled. | (Although, again, as a result of his own fabrication, he wasn't in the service, so obviously couldn't have earned promotion.) |
| 4. Alteration of his military record giving him an honorable discharge. | (Because the Army owed him some sort of duty to find out he was lying, that he was not a homosexual after all, and that he was merely trying to avoid military service.) |

Surely, this must be the outstanding example of *chutzpah* to the $n^{th}$ degree.

During the intervening years after being discharged, plaintiff had taken no action in this matter whatsover. A dismissal from employment, after it was found that he had falsified his service record, crystallized his desire to change the character of his discharge. He now seeks relief in this court.

There are two major issues in this case: the first being whether the defendant erred in not following its own discharge procedures properly; and the second being whether, in any event, plaintiff is estopped from asserting procedural error. We hold for the defendant on both points, each being able to stand on its own as alone justifying our decision.

I

Plaintiff argues that the Army failed to follow its own procedural regulations. AR 635–89, Section 2a does not permit homosexuals of either sex to serve in the Army in any capacity. Prompt separation of homosexuals is mandatory. However, Section 2b(1) adds that individuals who seek to avoid military service by an unverifiable assertion of homosexuality will not be processed under this regulation. Thus, whether plaintiff must be discharged under AR 635–89 depends upon interpretation of the phrase, "unverifiable assertion of homosexuality". Section 4b of the same regulation attempts to clarify what the Army must do to verify. Its principal, lead sentence is as follows:

A commanding officer receiving information that an individual under his command is a homosexual or has en-

---

is held but does not result in a punitive discharge. No distinction is made in the administrative handling of these cases involving homosexual acts because of the active or passive nature of the conduct of the participants.

e. *Class III.* Class III consists of those cases in which the homosexual individual involved has not engaged in a homosexual act during active military service, and those cases otherwise within the purview of these regulations but not falling within the purview of classes I or II.

\* \* \* \* \*

Section II
PROCEDURES

4. **Responsibility.** *a.* It is the duty of every member of the military service to be alert to situations affecting discipline, morale, or security of the military forces.

In this connection, overt homosexuality is not to be condoned, and when discovered, will be reported immediately through command channels to the commanding officer having jurisdiction over the individual concerned.

*b.* A commanding officer receiving information that an individual under his command is a homosexual or has engaged in an act of homosexuality, will inquire thoroughly and comprehensively into the matter and ascertain all the facts in the case, bearing in mind the peculiar susceptibility of such cases to possible malicious charges. \* \* \*

4. Plaintiff served only nine months and eight days, a substantial part of which had been spent being trained at government expense.

gaged in an act of homosexuality, will inquire thoroughly and comprehensively into the matter and ascertain all the facts in the case, bearing in mind the peculiar susceptibility of such cases to possible malicious charges.

Plaintiff, in effect, contends that these regulations, together, require a comprehensive investigation, going perhaps into community life, past experiences, even college and school episodes. One might well question whether his enthusiasm for investigation would have been as great back in 1965.[5] An "investigation" is clearly what plaintiff did not want if his present testimony that this was a fraud on the Army is to be credited. That an admission of homosexuality, confirmed by psychological and psychiatric examinations, might well be considered "verification" seems beyond his comprehension.

In addition, the phrase "malicious charges", suggests that this part of the regulation was aimed at preventing vicious denunciations and libelous charges of sexual deviation *by or against third parties*. The very sentence in which these words occur clearly refers to the situation where charges are made that a third party is a homosexual, not where an individual admits it by sworn statement. A self-admission by a fully-competent adult cannot possibly come within the "malicious charges" warning contained in the exact same sentence.[6] Language such as appears in this regulation should be given a common sense interpretation. Siegel v.

United States, 18 F.Supp. 771, 84 Ct.Cl. 551 (1937).

Then, too, since modern, enlightened thinking regards homosexuality as an illness, not a crime, even more logical is an interpretation which would require psychological evaluation, rather than a criminal investigation . . . when the homosexual is self-confessed. Clearly, plaintiff knew his discharge might be other than honorable and that he might encounter substantial prejudice in later civilian life due to his admitted homosexuality. He signed a statement to that effect. Not a scintilla of evidence suggested at that time that he was lying.

Finally, an interpretation that sworn admission of homosexuality plus psychiatric confirmation is sufficient for military discharge is in accord with long-standing agency interpretation. JAGA 1960/4901 (October 28, 1960), Comment No. 2. Therefore, both for the reason that the agency's established interpretation of the regulation is entitled to considerable weight, Barrington Manor Apartments Corp. v. United States, 459 F.2d 499, 198 Ct.Cl. 298 (1972); Cornman v. United States, 409 F.2d 230, 187 Ct.Cl. 486, cert. denied 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 424 (1969), and that the regulation, reasonably interpreted cannot be said to require the Army to conduct an investigation of plaintiff's military associates or prior college and business associates especially where there was absolutely no indication that plaintiff was lying,[7] we conclude

5. Nor is there any evidence here that plaintiff, who now blames the Army for not "investigating far enough", offered to co-operate in any way by giving names, addresses, dates, etc.

6. Plaintiff's argument would reach the unsupportable result of placing a much greater investigative burden on the Army in accepting a self-admission of homosexuality than is placed on a Federal District Court judge in accepting a plea of guilty in a criminal action. Weaver v. United States, 454 F.2d 315 (7th Cir. 1971); United States v. Rizzo, 362 F.2d 97 (7th Cir. 1966).

7. The belief that fabrication about homosexuality in the easiest "escape route" from the service is not necessarily the case.

It is a curious and interesting commentary on the general prejudice against homosexuals and the desire to eliminate them from the service that there would coexist a widespread belief held by responsible persons—then as today—that many individuals might profess homosexuality in order to evade (or seek a discharge from) military service. Such beliefs persist despite obvious evidence of a widespread and deep-rooted revulsion against homo-

that there was no procedural violation, but rather full adherence to appropriate Army regulations. A sworn admission of homosexuality plus psychiatric confirmation is sufficient to satisfy the provisions of AR 635–89.[8]

## II

█ It has long been a standing principle in this court that the conduct and admissions of a party operate against him in the nature of an estoppel when the other party detrimentally relies upon that conduct or those admissions. Mahoning Investment Co. v. United States, 3 F.Supp. 622, 629, 78 Ct.Cl. 231, 246 (1933), cert. denied 291 U.S. 675, 54 S.Ct. 526, 78 L.Ed. 1064 (1934). In the *Mahoning* case it was clearly stated that

> [T]he vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is *sternly forbidden.* It involves fraud and falsehood, and the law abhors both.

*Id.*

█ There is no doubt in the instant case that the government took a position detrimental to itself when it relied upon the 1965 statements of the plaintiff and granted a premature discharge from the Army to a man who had been trained at government expense. The government is thus clearly entitled to invoke the doctrine of equitable estoppel to prevent the plaintiff from profiting from his earlier fabrications. The doctrine of equitable estoppel is an old doctrine to which we continue to adhere. Pacific

Far East Line, Inc. v. United States, 394 F.2d 990, 1003, 184 Ct.Cl. 169, 194 (1968).

█ Plaintiff himself was content to be processed under the regulation as it was administered and most certainly benefited by the type of verification that was employed. He gained his discharge, yet was not then subject to public disclosure of his alleged problem. Plaintiff is subsequently estopped after he had benefited from the regulation and its implementation from claiming that something was amiss. Henneberger v. United States, 407 F.2d 1340, 187 Ct.Cl. 265, 267 (1969).

In light of the foregoing, we conclude that plaintiff is not entitled to recover. The petition is hereby dismissed.

NICHOLS, Judge (concurring):

I join in the opinion and findings of the court, but desire to add a few words. It appears to me the really basic error Commissioner Day fell into was his disregard of the rule that a litigant seeking to take advantage of the failure of an agency to follow its own regulations, must show that the regulation involved was made to protect persons in the litigant's class. The rule is discussed, and cases cited, in Chris Berg, Inc. v. United States, 426 F.2d 314, 192 Ct.Cl. 176 (1970). As there stated, if a regulation appears intended to define and state the rights of a class of persons, it is presumptively intended to benefit those persons. Insofar as the regulations here involved required independent corroboration of a competent soldier's assertion of his own homosexuality, it appears to me they were intended to prevent avoidance of military service by false confessions.

---

sexuality which would preclude the utilization of such evasive methods by non-homosexuals, particularly when more socially acceptable forms of simulation *(e. g.,* physical illness) can be employed.
L. West & A. Glass, Sexual Behavior and the Military Law, in Sexual Behavior and the Law 250, 254 (R. Slovenko ed. 1965) ; *see generally* Comment, Homo-

sexuals in the Military, 37 Fordham L. Rev. 465 (1968–69).

8. This situation is not unlike a Conscientious Objector who is excused from certain military service because of his own beliefs without further substantiation. *cf.* Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

Such a purpose is not compatible with protection of the individual soldier, and indeed as Judge Kunzig rightly points out, could have required an investigation which might have forced plaintiff to defend himself against serious criminal charges, if plaintiff's present interpretation is correct.

It would be a perversion of the judicial process for plaintiff to prevail in this action. However, I do not wish what is said about the claim herein to prejudice plaintiff at that time which sooner or later must come, when those who have resorted to means of avoiding military service even as bizarre as this, or more so, come under consideration for executive or legislative clemency.

---

**Louis STRUMSKIS**

**v.**

**The UNITED STATES.**

**No. 232–68.**

United States Court of Claims.

Feb. 16, 1973.

Louis Strumskis, plaintiff, pro se.

B. Frederick Buchan, Jr., Greensboro, N. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Joseph V. Colaianni with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on August 30, 1972. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by plaintiff and the case has been submit-