Bennett, Judge,
delivered the opinion of the court:
This case is before the court on cross-motions for summary judgment as a matter of law. The essential facts are not disputed. The action is for recovery of pay and allowances and for reinstatement of plaintiff who alleges that he was improperly removed from his position as a major in the United States Army Medical Corps in violation of statute and regulations relating to dismissal of officers and that he has unconstitutionally been deprived of all due process. For reasons which follow we conclude that plaintiff is not entitled to recover.
Plaintiff, who became a naturalized American citizen on November 29,1955, was bom in Prague, Czechoslovakia, and came to the United States on January 10,1953, under provisions of the Displaced Persons Act, ch. 647, 62 Stat. 1009 (1948), as amended. The Selective Service classified him as 1-A. He had been a conscientious objector but then applied for a Reserve commission in the United States Army Medical Corps on October 19, 1954. He had studied medicine at the University of Prague and at the University of Zurich, Switzerland. On his application he stated that he had at *286 tended high school in Warsaw, Poland, and that he had a B.A. degree (1947) and a B.S. degree in pathology from the University of Prague (1948), and an M.D. degree with a major in surgery from the University of Zurich (1952). Pie stated, also, that he had been an instructor in pathology at the University of Prague in 1947 and that he had been an intern in surgery and a resident physician in pathology at a hospital in Denver, Colorado, from July 1958 to October 1954. Before his internship he listed research work as having been done at the Colorado University School of Medicine in Denver. In further support of his application for a commission he submitted what he represented to be a certified translation of his diploma purportedly received from the University of Zurich on December 12, 1952, signed by the dean of the medical school and by the dean of the medical faculty.
Pursuant to his application and representations, plaintiff was tendered — and on March 24,1955, accepted — an appointment and was commissioned as a first lieutenant in the Army Reserve, service number 04023322. Plaintiff was ordered to active duty effective April 3,1955, and required to report to the medical field service school, Fort Sam Houston, Texas.
On May 5, 1959, while on duty at the Army hospital in Munich, Germany, plaintiff applied for a Regular Army commission. In support thereof he again represented that he was a graduate of the University of Zurich but this time listed his major as pathology rather than surgery. His application was endorsed by his commander and deputy commander who praised plaintiff’s performance of duties and professional qualifications. Plaintiff was tendered a Regular commission on July 6, 1960, which he accepted on July 19, 1960. He was then promoted to the rank of captain in the Army Medical Corps and on January 5, 1963, was promoted to the rank of major.
The Surgeon General of the Army in 1965 gave the American Medical Association (AMA) a list of names of Regular officers, including plaintiff’s, as eligible for AMA membership and requested that plaintiff’s name be placed on the AMA master list of physicians. The AMA routinely sought to verify plaintiff’s medical education by writing to the University of Zurich Medical School which came back with the *287 advice that plaintiff had not graduated there and had not been granted the degree of doctor of medicine, as plaintiff had represented. The AMA advised plaintiff of this by letter and denied him AMA membership. A copy of the letter went to the Surgeon General.
This startling development led the Army to make inquiry of its own of the University of Zurich and this confirmed the AMA information. Plaintiff had failed certain essential examinations, failed to take others, was denied a diploma and certification as a medical doctor, and on July 16, 1952, was refused further admission to the medical school. The text of the forged diploma plaintiff had submitted to defendant to obtain his commission was not even the same as actually used by the university on its valid diplomas.
There followed a formal criminal investigation by the military police on five alleged offenses: fraud; false official statement; using a false document; fraudulent appointment; and wrongfully, willfully, and unlawfully practicing medicine without being duly licensed or qualified. The Criminal Investigation Detachment (CID) report is before the court as an exhibit. It confirms the alleged offenses. On his behalf plaintiff told the CID investigators that the Army had never required him to produce a medical degree. However, plaintiff admitted that he did not complete his studies at the University of Zurich, was not granted a degree as a doctor of medicine by that university, and that the document on which he obtained his Medical Corps commission did not originate with the University of Zurich. The CID report states, in part:
While in the state of being emotionally carried away with his past accomplishments, steuek blurted out “that it wasn’t fair that a couple of little lies on his service records should be held against him after all the money he saved the government because of his professional services.”
The investigations further reported that a letter in plaintiff’s file stated that he had not obtained a medical license from the State of Colorado. Plaintiff finally refused to answer further questions put to him by the investigators and sought refuge under Article 31 of the Uniform Code of Military Justice and refused to effect a written statement. Article 31 prohibits compulsory self-incrimination.
*288 On January 16,1966, plaintiff was arrested by Swiss police at Zurich for a forergy offense. However, ¡he was deported on January 19,1966, by Swiss authorities as an undesirable alien.
By letter of February 17, 1966, addressed to the Adjutant General, Washington, D.C., plaintiff submitted what he described therein as his “unqualified resignation” specifying it “to be effective at the earliest possible date.” He stated that the reason for resignation was because of questions raised about his formal educational qualifications and that he desired to commence additional formal studies to rectify such, after which he wished to return to the Army or to enter civilian practice as a pathologist. He stated, further, that he expected a discharge under honorable conditions, and that he desired to be separated overseas. Plainfic was in Germany at the time where he was laboratory services chief and chief pathologist at the Army hospital in Munich.
Because this was a unique matter, the Judge Advocate General was asked for an opinion. That opinion, rendered on April 18, 1966, held that plaintiff’s status as a commissioned officer “was void from its inception. As such, there is no legal basis for his continued service in the Army Medical Corps, and he should be removed therefrom without delay. * * * As Major Steuer has no legal status to resign from, it would be legally objectionable to accept the resignation tendered by him.” It was suggeseted that the Comptroller General should be asked to rule on whether plaintiff had any right to retain any of the pay and allowances he had received. As a result of this opinion by the JAG, plaintiff was released from military service on April 29,1966, by Special Order No. 90, by direction of the President of the United States. The order stated that the release was “due to his commission having been void from inception.” There was also unelaborated reference to plaintiff’s “unqualified resignation.” Plaintiff did not receive a discharge certificate.
One year later, on April 5,1967, plaintiff appealed to the Board for Correction of Military Records (hereinafter the Correction Board). On June 15, 1967, the board, without a hearing, denied plaintiff’s appeal, stating that plaintiff had submitted insufficient evidence to indicate any probable ma *289 terial error or injustice. Plaintiff’s petition was filed with this court on April 27, 1972, 5 years from his application to the board, and 2 days short of 6 years since plaintiff’s release from the Army by the President’s order. Plaintiff’s motion for summary judgment was filed on March 14,1974.
I
Plaintiff’s motion is stated by him to be based upon the fifth amendment to the Constitution which protects persons from deprivation of life, liberty, or property, without due process of law, and upon statute, 10 U.S.C. § 1161, which reads in part:
■§1161. Commissioned officers: limitations on dismissed.
(a) No commissioned officer may be dismissed from any aimed force except—
(1) by sentence of a general court-martial;
(2) in commutation of a sentence of a general court-martial ; or
(3) in time of war, by order of the President.
Plaintiff also calls our attention to Article 83 of the Uniform Code of Military Justice, 10 U.S.C. § 883:
§ 883. Art. 83. Fraudulent enlistment, appointment, or separation.
Any person who — ■
(1) procures his own enlistment or appointment in the armed forces by knowingly false representation or deliberate concealment as to his qualifications for that enlistment or appointment and receives pay or allowances thereunder; or
(2) * * *
shall be punished as a court-martial may direct.
Upon the foregoing authority plaintiff says that he was entitled to a court-martial, that it was unilaterally denied, and that this is a procedural error which entitles him to back pay and reinstatement. He says that the pertinent statute and regulation foreclose any other method of separating him from the service and that violation thereof has deprived him of due process of law under the fifth amendment, notwithstanding implicit admission of fraud by his invocation of Article 83, supra. Particularly, plaintiff complains that not having been accorded a court-martial hearing, at which with *290 assistance of counsel he could defend himself after notice and charges, was a denial of due process; deprived him of valuable property rights earned over a period of more than 11 years of satisfactory service; blotted his reputation; and imposed upon him and his family the “cruel punishment” of being stranded in a foreign country without even being paid for his last month of military service or without having been afforded travel expenses back to the United States as provided by USAREUR Reg. 635-10.
II
Defendant’s cross-motion for summary judgment is advanced on several grounds. First, defendant contends that plaintiff has not stated a claim for which relief can be granted as it involves the internal workings of the Army. Second, it is alleged that plaintiff has failed to show arbitrary or capricious action on the part of the Correction Board. Third, plaintiff’s commission is said to be void because it was procured by fraud, which is apparent from plaintiff’s misrepresentations that he was a medical doctor. Fourth, plaintiff was not a de facto officer because he did not act in good faith and defendant’s acquiescence in his employment was induced by plaintiff’s fraud. Fifth, defendant says that Article 83 and the statute were not violated because they pertain to commissioned officers and plaintiff’s commission was void db initio on account of plaintiff’s fraudulent misrepresentations. Sixth, plaintiff voluntarily resigned and asked to be separated in Europe where he has chosen to remain. Seventh, plaintiff is barred by laches. All of defendant’s arguments have merit but we do not reach them all because it is unnecessary. Plaintiff is not entitled to recover and his claim is clearly without merit. We rely upon two grounds for this conclusion.
III
It is provided in 10 U.S.C. § 3294, in pertinent part as follows:
§ 3294. Commissioned officers; Medical and Dental Corps: original appointment
(a) Original appointments in the Regular Army may be made in the grades of first lieutenant through colonel *291 in the Medical Corps or Dental Corps, as the needs of the A nny require. These appointments may he made only from qualified doctors of medicine, osteopathy, or dentistry, as the case may be, who are citizens of the United States and who have such other qualifications as the Secretary of the Army may prescribe. * * *. [Emphasis supplied.]
Defendant has cited an Army regulation, unchallenged by plaintiff, as follows:

Laws and regulations:

Paragraphs 13a and 5, SE 140-105-6,28 Jan. 1953:
13. Medical Corps. — Applicants for appointment and assignment to the Medical Corps branch must meet the following requirements:
a. Be currently licensed to practice medicine in a State, Territory, or the District of Columbia, or possess a diploma from the National Board of Medical Examiners. Be currently engaged in the ethical practice of medicine. Waiver of license and actual engagement in practice may be granted for—
(1) Graduates of approved medical schools
(2) Individuals who have successfully completed the prescribed course of medical instruction at medical schools which are acceptable to the Department of the Army.
h. Possess the degree of Doctor of Medicine from a medical school acceptable to the Department of the Army. * * *. [Emphasis supplied.]
It is not necessary to belabor the point that the undisputed evidence is that plaintiff was not a qualified doctor of medicine such as described by statute, that he was not licensed to practice nor ethically engaged therein, that he was not a graduate of a medical school and had no medical degree, and that he had not completed the necessary courses and examinations. His misrepresentations about his qualifications misled defendant. Of course, the negligence of defendant in failing for 11 years to make any effort to verify plaintiff’s self-serving claims about his qualifications is appalling and cannot be condoned. But, this does not excuse the fraud. As soon as defendant was put on notice that there was a problem here it acted with dispatch to correct it. Plaintiff says defendant acted with too much dispatch, and that is the basis of his claim. But, there is a short answer which makes it unneces *292 sary to reach the constitutional and other issues advanced by the parties. The answer is the doctrine of equitable estoppel which is properly invoked to prevent a party from profiting by his own fabrications and misconduct.
In Weir v. United States, 200 Ct. Cl. 501, 474 F. 2d 617, cert. denied, 414 U.S. 1066 (1973), the court considered the case of a former soldier who by sworn statements obtained a premature release from the military service by confessing to homosexual tendencies. Defendant verified the tendencies by a psychiatric investigation and evaluation. After he found that his military record prejudiced his civilian job opportunities, however, Weir claimed that he was not a homosexual, defendant should have found out that he had lied, and should have denied his discharge! On this he sued for back pay, restoration to his position, missed promotions, and for correction of his military records to show an honorable discharge. The court said in part:
It has long been a standing principle in this court that the conduct and admissions of a party operate against him in the nature of an estoppel when the other party detrimentally relies upon that conduct or those admissions. Mahoning Investment Co. v. United States, 78 Ct. Cl. 231, 246, 3 F. Supp. 622, 629 (1933), cert. denied, 291 U.S. 675 (1934). In the Mahoning case it was clearly stated that
[T]he vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. [Emphasis in text. 200 Ct. Cl. at 510-11, 474 F. 2d at 622.]
The court in Weir described plaintiff’s claim as “the outstanding example of chutzpah to the nth degree.” 200 Ct. Cl. at 508, 474 F. 2d at 620. The instant case is a worthy rival.
Plaintiff’s reply brief agrees that equitable estoppel is a valid doctrine and cites in support of it Greve v. Gibraltar Enterprises, Inc., 85 F. Supp. 410 (D.N.M. 1949), Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232-33 (1959), and Fansteel Metallurgical Corp. v. United States, 145 Ct. Cl. 496, 501, 172 F. Supp. 268, 271 (1959). But, plaintiff would *293 invoke the doctrine against defendant for “contributing to the difficulties which in turn have led to the delay in filing” this suit. Just what fault of the Army has contributed to this delay is not specified. The argument is frivolous. Further reference to plaintiff’s delay in prosecuting his claim is made in part IY of this opinion.
Plaintiff’s claim that there has been a procedural violation because a statute or regulation was violated and that this entitles him to recover notwithstanding his own fraudulent misconduct, has no merit. Defendant did not acquiesce in plaintiff’s military service knowing of his fraud. The fraud achieved no status of validity by the fact that it was successfully concealed for so long. Since plaintiff was really a civilian — he had been improperly commissioned and defendant did not ratify the commission or waive the mistake, not knowing of the fraud — there is even serious question as to whether plaintiff could be court-martialed especially if criminal sanctions were imposed upon him. McElroy v. United States ex rel. Guagliardo, 361 U.S. 281 (1960); Reid v. Covert, 354 U.S. 1 (1957); United States ex rel. Toth v. Quarles, 350 U.S. 11 (1955). However, since plaintiff was not validly commissioned under 10 U.S.C. § 3294, his reliance on 10 U.S.C. § 1161 is misplaced. It does not apply to him. Be that as it may, what would a court-martial really have accomplished in these circumstances where the fraud is so plain and is only sought to be excused as “a couple of little lies” that ought to be overlooked in view of plaintiff’s long service? Plaintiff admits his fraud by reliance on Article 83, Uniform Code of Military Justice, supra. That regulation must be given a commonsense interpretation. Weir v. United States, supra, 200 Ct. Cl. at 509, 474 F. 2d at 621. Form must not be elevated above substance. A plaintiff bears a heavy responsibility for failure to receive a timely hearing on a charge when he did not raise it while in defendant’s employment, and does not explain why he did not raise it. If there is any procedural error by defendant in such circumstances, it is harmless error. Further, where it is not shown that a regulation has been violated before leaving employment it is also harmless error. Here, plaintiff resigned voluntarily and sought no hearing and does not plead ignorance of his *294 alleged right thereto. Gratehouse v. United States, 206 Ct. Cl. 288, 512 F. 2d 1104 (1975). Statutes, like regulations, must not be construed to produce absurd and whimsical results unrelated to congressional purpose. Plaintiff’s argument, if adopted here, would produce such results. This is to be avoided. Church of the Holy Trinity v. United States, 148 U.S. 457, 460 (1892); Kantor v. United States, 205 Ct. Cl. 1 (1974); Northwest Marine Iron Works v. United States, 203 Ct. Cl. 629, 493 F. 2d 652 (1974).
IV
Plaintiff’s claim is also barred by laches, an affirmative defense pleaded by defendant. As noted above in the statement of facts, plaintiff was dismissed from the Army on April 29, 1966. His claim accrued on that date. Cochran v. United States, 205 Ct. Cl. 876 (1974); Vincin v. United States, 199 Ct. Cl. 762, 468 F. 2d 930 (1972); O'Callahan v. United States, 196 Ct. Cl. 556, 451 F. 2d 1390 (1971); Crowe v. United States, 196 Ct. Cl. 565, 452 F. 2d 1034 (1971); Mathis v. United States, 183 Ct. Cl. 145, 391 F. 2d 938 (1968). He applied to the Correction Board for relief on April 5, 1967, but lost his case there on June 15, 1967. His petition was not filed with the court until April 27, 1972, only 2 days short of the expiration of the 6-year statute of limitations within which time suit could be filed. 28 U.S.C. § 2501. There is no doubt that sufficient delay exists to bar the claim for laches, if it is not excusable delay, or unless defendant is not prejudiced by it. Plaintiff seeks to excuse his being so dilatory by alleging that he sought legal counsel unsuccessfully in 1966 and, being unable to afford his fees and living abroad in straitened circumstances, could not proceed.
Laches is a doctrine grounded on considerations of public policy that for the peace of society demands diligence in the prosecution of erroneous dismissal and removal actions in order to avoid stale claims. Powell v. Zuckert, 366 F. 2d 634, 636 (D.C. Cir. 1966); Brundage v. United States, 205 Ct. Cl. 502, 504 F. 2d 1382 (1974), cert. denied, June 2, 1975. Delay in searching for a lawyer does not excuse excessive delay. Gersten v. United States, 176 Ct. Cl. 633, 636, 364 F. 2d 850, *295 852 (1966). Pursuit of permissive administrative remedies does not excuse unreasonable delay. Vincin v. United States, supra; Crowe v. United States, supra; Mathis v. United States, supra; Jackson v. United States, 179 Ct. Cl. 29, cert. denied, 389 U.S. 985 (1967); Gersten v. United States, supra, 176 Ct. Cl. at 635-36, 364 F. 2d at 851-52; Kirk v. United States, 164 Ct. Cl. 738 (1964); Alpert v. United States, 161 Ct. Cl. 810, 823 (1963). Correction Board relief is generally a permissive administrative remedy and is so in the circumstances of this case. Friedman v. United States, 159 Ct. Cl. 1, 310 F. 2d 381 (1962); cert denied, 373 U.S. 932 (1963); Lipp v. United States, 157 Ct. Cl. 197, 301 F. 2d 674 (1962), cert. denied, 373 U.S. 932 (1963). See generally J. Glosser and K. Rosenberg, Military Correction Boards: Administrative Process and Review by the United States Court of Claims, 23 am. ir. l. rev. 391 (1973). We would be most reluctant to impose the bar of laches in such a way as to discourage reasonably prompt, good faith pursuit of permissive administrative remedies for relief. Cason v. United States, 200 Ct. Cl. 424, 432, 471 F. 2d 1225, 1229-30 (1973). But, that is not the situation here. Almost 5 years elapsed between the adverse decision by the Correction Board and plaintiff’s filing suit in court. There is no explanation for this procrastination unless it is plaintiff’s claim of indigency and lack of credit, substantiated only by the unsworn certification by his counsel in plaintiff’s brief in response to defendant’s motion. That could be a plausible defense against laches in some circumstances but not in a suit for back pay or where delay is unreasonably long. Powell v. Zuckert, supra. In Brundage v. United States, supra, the bar of laches was imposed by the court for the lapse of much less time than here when extenuating circumstances for the delay also were not shown. The court in that opinion reiterated the rule that unjustified, unreasonable delay alone is insufficient to support laches unless prejudice to defendant arising from that delay is shown. But, the court said:
* * * It is reasonable to presume that another officer or officers have held plaintiff’s position since he left the service, discharging the duties formerly performed by him, and drawing the salary plaintiff claims should have been paid to him. See Blackmar v. United States, 354 *296 F. 2d 340, 347, 173 Ct. Cl. 1035, 1046 (1965); Bovard, supra, 160 Ct. Cl. at 622. However, even if no one was selected to replace plaintiff, or to perform the tasks that once were his, a recovery by plaintiff would require the Government to pay him the salary of a Major, for a period of over five and a half years [footnote omitted], during which time * * * he had ample opportunity to fully assert his claim. [205 Ct. Cl. at 510, 504 F. 2d at 1386-87.]
Cf. United States ex rel. Arant v. Lane, 249 U.S. 367, 372 (1919); Chappelle v. United States, 168 Ct. Cl. 362, 366 (1964). In Brundage, supra, the court made a presumption of prejudice based on a record that made such prejudice evident by unjustified, unreasonable delay in bringing suit. Defendant says that is the same situation we have before us again in the present case. Here, however, recovery, if allowed, would go back even longer, to 1966. Defendant assures the court that it is prejudiced by the routine destruction of some records and the scattering and loss of potential witnesses which would handicap its defense in a trial on the merits. Defendant also claims prejudice by not having received the services which plaintiff claims he was eligible to render and for which he claims he should have been paid since his separation from the Army. Someone else has had to do plaintiff’s work and be paid for it, or at least that is so if we apply the presumption made in Brundage.
It is difficult to perceive a case where laches could more properly be asserted by defendant, or applied by the court, than here. We have had few, if any, cases of greater unjustified delay in bringing suit. The Supreme Court and lower courts have approved laches as a bar for shorter periods of time. To cite only a few of many examples: Norris v. United States, 257 U.S. 77 (1921); Nicholas v. United States, 257 U.S. 71 (1921); United States ex rel. Arant v. Lane, supra; Powell v. Zuckert, supra, 366 F. 2d at 636 n. 1; Brundage v. United States, supra; Bovard v. United States, 160 Ct. Cl. 619, cert. denied, 374 U.S. 830 (1963).
Laches has not often been applied by this court to bar military pay claims, but we have sufficient precedent for doing so, as we do here where the delay is unjustified and unreasonable, and the Government is obviously prejudiced by it in *297 fact or by reasonable presumption. When the delay in bringing suit has been of such long duration that the burden of overcoming the possibility of prejudice to defendant has shifted to plaintiff to show that defendant is not prejudiced, and where plaintiff has not met that burden, his claim must fall before the concept that “equity aids the vigilant, not those who slumber on their rights.” Quoted from 2 pomeroy’s equity jurisprudence §418 (5th ed. 1941) in Powell v. Zuckert, supra, 366 F. 2d at 636. See Wilmot v. United States, 205 Ct. Cl. 666 (1974); Bender v. United States, 201 Ct. Cl. 865, cert. denied, 414 U.S. 1022 (1973); Cason v. United States, supra, 200 Ct. Cl. at 431, 471 F. 2d at 1229; Grisham v. United States, 183 Ct. Cl. 657, 392 F. 2d 980, cert. denied, 393 U.S. 843 (1968); Gersten v. United States, supra, 176 Ct. Cl. at 636, 364 F. 2d at 852.
Plaintiff’s motion for summary judgment is denied. Defendant’s cross-motion for summary judgment is granted. The petition is dismissed.